**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

**WILLIAM D. WAITS**                                                                                   **CASE NO. 10-52109**
**DEBTOR**

**UNITED STATES TRUSTEE**                                                                          **PLAINTIFF**

**V.**                                                                                                          **ADV. CASE NO. 10-5106**

**WILLIAM D. WAITS**                                                                                   **DEFENDANT**


**MEMORANDUM OPINION**

The issue before the Court is whether the Defendant Debtor William D. Waits should be denied his Chapter 7 discharge pursuant to 11 U.S.C. §727(a)(4)(A), §727(a)(4)(D), and/or §727(a)(6)(A) based on (1) a misrepresentation made during the Debtor's first meeting of creditors regarding the source of an income tax refund and (2) the Debtor's failure to timely turnover his complete 2009 Federal and State tax return to the Chapter 7 Trustee. After weighing the evidence and considering the testimony presented at trial, the Court holds that the United States Trustee has failed to meet his burden of proof under §727(a)(4)(A), §727(a)(4)(D), and §727(a)(6)(A) and judgment shall be entered for the Debtor.

**FINDINGS OF FACT**

The Debtor, a RV dealer for most of his life, sold his RV business in 2005. Two years later he purchased an automobile dealership business in Lawrenceburg, Kentucky, to operate as a sole proprietorship doing business as "Bill Waits Auto Mall." Bill Waits Auto Mall soon fell

1

on hard times and was forced to file for Chapter 7 Bankruptcy.[1] The Debtor, who had invested approximately $1 million of his own money into this business, ultimately filed for personal Chapter 7 bankruptcy relief on June 30, 2010.

At the time the Debtor filed his petition, he had not yet filed his Federal and State income tax return for 2009 (the "2009 Tax Return"). On Schedule B of his petition, the Debtor listed a 2009 Federal and State joint income tax refund in the estimated amount of $4,000.00 (the "2009 Tax Refund"). He claimed this amount as exempt on Schedule C pursuant to 11 U.S.C. §522(d)(6).

On July 1, 2010, James D. Lyon was appointed as the Chapter 7 Trustee (the "Trustee"). That same day, the Court issued the Chapter 7 Order to the Debtor requiring the Debtor to turn over a series of records to the Trustee within fourteen days of the filing of the petition, including but not limited to, copies of the Debtor's last state and federal income tax returns.

In August of 2010, the Debtor filed his joint 2009 Tax Return. The Debtor then provided to his bankruptcy counsel the first two pages of his 2009 Tax Return, which were turned over to the Trustee. Sometime thereafter, the Debtor received a tax refund check made payable to him and his wife in the total amount of $3,069, and promptly used the funds to pay the couple's bills.

Also in August of 2010, the Debtor received a letter from Wachovia Bank N.A. ("Wachovia") informing him that he had a bank account with Wachovia in Savannah, Georgia with a balance of $12,816.99 (the "Wachovia Account"). The account was not listed on the original bankruptcy petition as an asset.

The §341 First Meeting of Creditors ("§341 Meeting") was originally scheduled for July 29, 2010 and then continued to September 9, 2010. The day before the rescheduled §341 Meeting, the Debtor met with his bankruptcy counsel and discussed his discovery of the Wachovia Account. The Debtor's counsel and the Debtor then called Wachovia to confirm that

---

[1] *See In re Bill Waits Motors, LLC*, Eastern District of Kentucky, Frankfort Division, Case No. 10-30193.

the existence of the account and request bank statements. Wachovia refused to provide bank statements based on an authorization over the telephone.

On September 9, 2010, less than an hour prior to the rescheduled §341 Meeting, the Debtor filed an amendment to Schedule B adding the Wachovia Account. The Debtor also filed an amendment to Schedule C in which the Debtor claimed an exemption of $9,575.00 of the funds in the Wachovia Account pursuant to §522(d)(1) and withdrew his claimed exemption in the 2009 Tax Refund, indicating it was the "property of non filing spouse."

Shortly after the filing of the amendments to Schedules B and C, the Trustee conducted the Debtor's §341 Meeting. The Trustee was then informed for the first time about the Debtor's recent amendments to his schedules.

The Trustee questioned the Debtor regarding about the amendments. In response to the Trustee's questions about the Wachovia Account, the Debtor testified that at the time of the filing of his petition, he was not aware of the account. The Debtor testified that he believed the account was related to his RV business in Georgia that he sold in 2005. The Debtor explained that very same year he divorced and moved to Florida before moving to Kentucky two years later. The Debtor testified that he never received any bank statements related to the Wachovia Account and was not informed of the Account's existence until after filing bankruptcy.

The issue of the 2009 Tax Refund was also raised by the Trustee at the §341 Meeting. During the §341 Meeting, the Debtor's counsel informed the Trustee that the 2009 Tax Refund belonged to the Debtor's wife, because she was the only one with income during the 2009 taxable year:

> Mr. Atkinson: Well, I think the…
>
> Mr. Lyon: The money is already gone.
>
> Mr. Atkinson: Well, I think it's his wife's.
>
> Mr. Lyon: Why do you think it's the wife's?

3

> Mr. Atkinson: Because she's the only one who had any income.
>
> Mr. Lyon: So? That doesn't mean that – that some of the refund's not attributable to him. How much would she have gotten had they not been married and filing jointly?
>
> Mr. Atkinson: That I don't know.
>
> Q. Okay. That we need to find out.…

At the time, the Debtor did not speak up and contradict his attorney's representation that his wife was the only one who had any income that year.

The Debtor's counsel and the Trustee then had had the following conversation regarding the Debtor's recent amendments to Schedules B and C:

> Q. Okay. I'm going to reserve on all this and – and have you filed this today
>
> A. Yeah.
>
> Q. Okay. I'm obviously going to need more information –
>
> Mr. Atkinson: Do –
>
> Q. And I'm not sure I agree with you on the – on the tax refund.
>
> Mr. Lyon: There's – we've got 30 days to object and – taken the refund money and spent it and now you're saying it's not – not his property.
>
> A. Well, when I say I spent it, actually we spent it, my wife and I, on the house payments –
>
> Q. I understand.
>
> A. (inaudible) down there.
>
> Mr. Atkinson: I guess we can look into your comment regarding what her refund would have been on her own.
>
> Mr. Lyon: It looks like that the bulk of his refund is from this net operating loss carried forward. That's his, not hers. If it wasn't for her – if it wasn't for him, she wouldn't have gotten a dime, right?
>
> Mr. Atkinson: But on the flip side, if it wasn't for her, he wouldn't have gotten a dime either because that's what they paid in.

4

>Mr. Lyon: Okay. Nevertheless…I mean, if you want to give me an opinion that's worth that, that's fine.
>
>Mr. Atkinson: Yeah. I'll take a look at it, Jim, and see if I can find anything that supports that and if not, I mean –
>
>Mr. Lyon: Okay

Again, the Debtor did not contradict his attorneys' representations as to the 2009 Tax Refund.

The Debtor's counsel's insistence on the characterization of the 2009 Tax Refund as property of the non-debtor spouse ultimately lit the fuse that resulted in this adversary proceeding. At the time that the Trustee conducted the §341 Meeting, he did not have in his possession the Debtor's complete 2009 Tax Return as required by the Court's Chapter 7 Order and thus he could not confirm the characterization of the 2009 Tax Refund as property of the non-debtor spouse. Furthermore, although the Trustee was aware of the Wachovia Account at the §341 Meeting because of a communication he received from Wachovia informing him of the existence of the Account, the Trustee was unable to investigate further because he had received no bank statements from the Debtor.

The Trustee therefore requested the Debtor provide him a full copy of the Debtor's 2009 Tax Return. The Debtor did not provide these documents as requested and on October 14, 2010, the Trustee moved for a Fed. R. Bank. P. 2004 examination ("2004 Examination") of the Debtor to inquire further about the 2009 Tax Refund and the Wachovia Account. The Court granted the Trustee's Motion and the 2004 Examination was scheduled for November 4, 2010.

On October 29, 2010, the Trustee finally received from the Debtor a full copy of the Debtor's 2009 Tax Return. The 2009 Tax Return revealed the Debtor earned a salary of $39,000 from Bill Waits Auto Mall and the Debtor's wife reported $10,775 in unemployment compensation. It also showed a business loss of $340,401.00. Upon examination of the 2009

Tax Return, the Trustee concluded the Debtor rather than his wife earned the majority of the income in 2009 and the 2009 Tax Refund was therefore property of the Debtor.

Furthermore, on or about September 29, 2010, the Trustee requested and received from Wachovia the funds contained in the Wachovia Account. The Debtor then provided to the Trustee a letter from a Wachovia representative dated October 21, 2010, explaining that the Wachovia Account was opened in Georgia on June 3, 2005, but Wachovia's records listed an incorrect address for the Debtor. Wachovia also stated in the letter that no activity had occurred in the account in the past two years except for the withdrawal of funds by the Trustee on September 29, 2010.

Following a discussion with the Debtor's counsel regarding the nature of the 2009 Tax Refund and the Wachovia Account, the Debtor and the Trustee entered into an Agreed Order dated and signed on November 4, 2010 whereby the parties agreed: (1) the Debtor is entitled to claim his full exemption under 11 U.S.C. §522(d)(5) in the amount of $11,975 and (2) the Debtor could claim as exempt $7,855 of the $12,816 in the Wachovia Account pursuant to §522(d)(5), with the remaining funds being property of the estate. The parties also agreed to remand the Order for the 2004 Examination. This agreement allowed the Debtor to exempt a portion of the funds contained in the Wachovia Account. Despite this resolution of the exemption issue, the Trustee, believing misrepresentations had been made, reported the events to the United States Trustee.

On January 27, 2011, the Debtor filed an amendment to Schedule B to disclose a Net Operating Loss carry back for 2009 with a value of $27,634. On January 24, 2011, the Debtor's counsel forwarded two refund checks in the total amount of $27,634 to the Trustee. No additional amendments to the schedules have been filed.

The United States Trustee filed the underlying adversary proceeding on November 26, 2010 seeking a denial of the Debtor's discharge pursuant to §727(a)(4)(A), §727(a)(4)(D), and

6

§727(a)(6)(A).  The matter was tried on August 23, 2011.  The United States Trustee introduced as proof the following: (1) the testimony of the Chapter 7 Trustee; (2) testimony of the Debtor; (3) exhibits, including the Debtor's 2009 Tax Returns and transcripts from the §341 Meeting and the Debtor's deposition; and (4) the parties' joint stipulations. The Debtor, in addition to his own testimony and exhibits, introduced the testimony from the following: (1) Jennifer Waits, the Debtor's wife; (2) Andrew W. Brodmann, the Debtor's accountant; (3) Tina Cornell, the paralegal who provided documents to the Chapter 7 Trustee; and (4) two character witnesses, or Dean Langdon, prior bankruptcy counsel for Bill Waits Auto Mall, and Roy Alves, a former employee of Bill Waits Auto Mall.

At trial, the Chapter 7 Trustee testified consistent with the facts previously cited herein about his conversation with Debtor's counsel at the §341 Meeting, his receipt of the first two pages of the Debtor's 2009 Tax Return, his failure to receive a complete copy of the Debtor's 2009 Tax Returns until October 29, 2010, and the compromise he reached regarding the Debtor's use of the his wildcard exemption under §522(d)(5).  According to the Trustee, the compromise allowed the Debtor to use his exemption to cover the funds in the Wachovia Account, carving out everything except the value of the 2009 Tax Refund, which the Trustee testified he believed to be property of the estate.

The Debtor testified in his defense regarding the events surrounding the 2009 Tax Refund and Wachovia Account.  The Debtor testified he does not believe he earned any income in 2009.   The Debtor testified that although the 2009 Tax Return reflects a salary of $39,000 from Bill Waits Auto Mall, this number does not accurately reflect his income because it is offset by the dealership's business loss of approximately $340,000.  Because the business loss exceeded his income earned, the Debtor testified that he believes he did not earn an income in 2009, but rather incurred a loss of $141,661.  Hence the Debtor's belief that the 2009 Tax Refund belongs to his wife.  Moreover, although the 2009 Tax Return reflects Mrs. Wait's

7

unemployment compensation in the amount of $10,775, the Debtor denied that he had any knowledge about his wife's unemployment or her receipt of unemployment benefits at the time the alleged misrepresentations were made. This testimony is consistent with the Debtor's prior deposition testimony.

The Debtor also explained his behavior at the §341 Meeting by testifying that at the time his attorney and the Trustee were discussing the 2009 Tax Refund, he was not engaged in the colloquy between counsel and primarily recalled the discussion focusing on the Wachovia Account. He testified that he did not completely understand the conversation but recalled the statement made by his counsel that the 2009 Tax Refund belonged to his wife. This is consistent with the Debtor's prior testimony at his deposition, where the Debtor testified in response to a question posed by the United States Trustee about his attorney's representation at the §341 Meeting that he would "have to agree" with his counsel's statement because, "[a]ccording to the tax return, she is the only one that had income."

Finally, the Debtor testified that he did not intentionally withhold or refuse to provide the Trustee with his complete 2009 Tax Return. The Debtor explained that at the time of the filing of the petition, the 2009 Tax Return was not yet filed. Once filed in August of 2010, he then provided the first two pages of his 2009 Tax Return to his attorney, who turned the first two pages over to the Trustee. This is consistent with the testimony of the Chapter 7 Trustee, who admitted to receiving the first two pages of the 2009 Tax Return, and Ms. Cornell, a paralegal for Debtor's counsel who testified she provided the 2009 Tax Return to the Trustee by email in July of 2010.

The Debtor further testified that it was his belief that the first two pages of his 2009 Tax Return were sufficient based on his prior experience in dealing with banks and his counsel's advice that the first two pages would be sufficient. According to the Debtor, upon learning that

8

the first two pages were not sufficient, he provided the complete 2009 Tax Return to the Trustee, albeit untimely.

The Debtor also introduced in his defense the testimony of his accountant, Andrew Brodmann. Mr. Brodmann testified that he prepared the Debtor's 2009 Tax Return. He agreed with the Debtor's interpretation of his return; according to Mr. Brodmann, the $39,000 salary paid to the Debtor as reflected on the 2009 Tax Return has no significant effect on the actual amount of income earned that taxable year, or in this case, the loss incurred. Mr. Brodmann concluded that, in his opinion, the Debtor's interpretation of his income as a loss of approximately $141,000 is accurate. Mr. Brodmann further testified that the Debtor, although allowed to carry a Net Operating Loss back, ultimately elected to carry the Net Operating Loss forward, resulting in a sizeable refund that was subsequently turned over to the Chapter 7 Trustee.

The Debtor's wife, Jennifer Waits, confirmed in her testimony that while she ceased receiving a salary from Bill Waits Auto Mall in the fall of 2008, she did not cease working. She testified that she and her husband spent much of their time apart in 2009, separating in the early part of the year, during which time she returned to Florida and filed for unemployment, but thereafter reconciled with her husband for a short period of time during the summer of 2009. While reconciled, Mrs. Waits explained that she returned to Kentucky and spent much of her time working for the dealership, apparently without pay. Mrs. Waits also testified that 2009 was a tumultuous time for her and her husband due to the stress the filing of the business bankruptcy put on their marriage. Finally, Mrs. Waits explained that the Debtor primarily delegated duties to others and did not involve himself in the details, hence his lack of knowledge as to her unemployment. Roy Alves, a prior employee of the Debtor, and Dean Langdon, bankruptcy counsel responsible for the filing of Bill Waits Auto Mall's Chapter 7 bankruptcy, testified about a similar management style.

9

At the conclusion of the United States Trustee's proof, the Debtor moved for a directed verdict on all three counts. The Court overruled the Debtor's Motion for a Directed Verdict on §727(a)(4)(A), but took the Motion for a Directed Verdict on §727(a)(4)(D) and §727(a)(6)(A) under submission. At the conclusion of trial, the Court took the entire matter under submission.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1334 and this is a core proceeding under 28 U.S.C. §157(b)(2)(J).

It is the law in the Sixth Circuit that "the provisions of §727(a) are to be construed liberally in favor of granting the debtors the fresh financial start contemplated by the Bankruptcy Code and the Supreme Court, and construed strictly against parties seeking to deny the granting of a debtor's discharge." *Clippard v. Jarrett (In re Jarrett)*, 417 B.R. 896, 901 (Bankr. W.D. Tenn. 2009) (*citing Meyers v. Internal Revenue Service (In re Meyers)*, 196 F.3d 622,624 (6th Cir. 1999)). Denial of a debtor's discharge is a remedy that is reserved for only the most egregious cases and should not be used in circumstances where acts and omissions may have been inadvertent or excusable. *Id.*

The United States Trustee seeks a denial of discharge under three separate subsections of §727(a). First, the United States Trustee alleges the Debtor should be denied his discharge pursuant to §727(a)(4)(A) because the Debtor knowingly and fraudulently making a false oath or account when he adopted and/or failed to correct the statement of his counsel made to the Trustee during the §341 meeting that his wife earned all of their income in 2009. The United States Trustee also alleges that the Debtor's discharge should be denied pursuant to §727(a)(4)(D) for withholding from the Trustee recorded information related to the Debtor's property and financial affairs and providing an incomplete tax return from which his income could not be determined. Finally, the United States Trustee argues that the Debtor's failure to obey a lawful order of the Court requiring the turnover of a complete copy of the Debtor's last

10

tax return within fourteen days of the filing of the petition, as ordered by the Court, violates §727(a)(6)(A) and warrants a denial of discharge.

The Court, having considered the testimony of the witnesses at trial, the exhibits, stipulations, arguments from the parties' written trial briefs, and the entire record, makes the following conclusions of law:

### A.     11 U.S.C. §727(a)(4)(A)

Pursuant to §727(a)(4)(A),the Court shall grant the Debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case, (A) made a false oath or account." 11 U.S.C. §727(a)(4)(A).  To prevail, the United States Trustee must prove, by a preponderance of the evidence: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement materially related to the bankruptcy case.  *See Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000).  The Sixth Circuit succinctly explained these elements in *Keeney* as follows:

> 'Complete financial disclosure' " is a prerequisite to the privilege of discharge. *Peterson*, 172 F.3d at 967. The Court of Appeals for the Seventh Circuit has explained that intent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* " '[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.' " *Williamson*, 828 F.2d at 252 (citation omitted). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence. *See Gullickson,* 108 F.3d at 1294. The subject of a false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.' " *Beaubouef*, 966 F.2d at 178 (citation omitted).

*In re Keeney*, 227 F.3d at 685–86.

Statements under oath as defined in §727(a)(4)(A) include testimony given by a debtor at the first meeting of creditors, in a deposition, or in a 2004 examination, as well as statements

made by a debtor in the schedules and statement of financial affairs. *See Newton v. Sims (In re Sims)*, 2011 WL 2619106, *6 (Bankr. E.D. Tenn. July 1, 2011). Moreover, §727(a)(4)(A) includes both affirmative false statements and omissions. *Gordon v. Courtney (In re Courtney)*, 351 B.R. 491, 505 (Bankr. E. D. Tenn. 2006). In this instance, the United States Trustee does not focus on an affirmative misstatement made by the Debtor in his bankruptcy schedules or even an omission of assets, which is so often the case. *See, e.g., Keeney*, 227 F.3d at 685-86. Rather, the United States Trustee focuses on a misstatement made by counsel during the §341 Meeting and the Debtor's failure to speak up, despite no direct question asked or pending, after the misstatement was made.

This Court is not persuaded by the United States Trustee's argument that the Debtor made a false statement or omission at the §341 Meeting when he failed to correct his attorney's representation. The United States Trustee has cited no case law supporting a denial of discharge under §727(a)(4)(A) based on a debtor's failure to correct a misstatement by counsel made during a discussion between counsel and the Trustee. The United States Trustee cites only one case, *Black v. Penn Central Co.*, 507 F.2d 269, 273 (C.A. Ohio 1974), in support of his argument, relying solely on a statement by the dissent that "the admission of an attorney, as in a pleading, may come in as an adopted admission of his client."

The *Black* case has no bearing on the issue of whether the Debtor made a false oath or account. The court in *Black* did not address a denial of discharge under §727(a)(4)(A). The issue before the Court was whether it is prejudicial error to cross-examine a plaintiff about another lawsuit arising out of the same accident. In addressing this evidentiary issue, the dissent, disagreeing with the majority that such cross-examination was not prejudicial error, raised the notion that an admission of an attorney may come in as an adopted admission by his client. *Black*, 507 F.2d at 273. Neither the majority nor the dissent addressed the issue of

whether a bankruptcy discharge can be denied for a failure of a debtor to correct an erroneous statement by his counsel during a §341 Meeting.

That said, the Debtor did sign, under the penalty of perjury, an amendment to Schedule C changing his exemption to cover the 2009 Tax Refund and affirmatively stating that the 2009 Tax Refund belonged to his wife. Moreover, the Debtor also testified in a subsequent deposition that he agreed with his attorney's statement at the §341 Meeting based on his 2009 Tax Return. These statements are statements under oath pursuant to §727(a)(4)(A). *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999).

The inquiry does not end there. The United States Trustee must still prove that a false statement was made knowingly and fraudulently to prevail. Based on the record before the Court, there is no evidence that the Debtor acted with an intent to deceive or a reckless indifference necessary to justify denial of the Debtor's discharge. The Debtor testified at trial that he did not knowingly intend to defraud the Trustee. The Court, having an opportunity to observe the demeanor of the Debtor during his direct and cross-examination, finds his testimony credible. The Debtor adequately explained his reason for believing the 2009 Tax Refund belonged to his wife in terms of his understanding of his income as a negative number due to the business loss Bill Waits Auto Mall suffered in 2009. The Debtor's accountant testified that this understanding of his income as a loss is not inaccurate. Furthermore, while the Court believes it is strange for a husband to claim ignorance of his wife's lack of income, particularly where that husband owns the business where his wife works, the Court finds the circumstances of the Debtor's marriage and separation, as well as his approach to management of his business, as reflected in his wife's testimony and that of his former employee and former bankruptcy counsel, adequately explain his ignorance.

Moreover, with regards to the Debtor's failure to speak up during the §341 Meeting, it is not unreasonable for a debtor, untrained in bankruptcy law, to remain silent during colloquy

13

between counsel at such meetings. The Debtor testified that he believed the focus of that conversation to be on the Wachovia Account and its application to his exemptions under the Code. He further testified that he did not completely understand the conversation. While the Debtor admits he remembers his attorney referring to his wife as the wage earner in 2009, he testified he did not believe the focus was on that issue and was also at the time proceeding under the belief that his income was actually a loss and the 2009 Tax Refund was a result of his spouse's earnings. Based on the Debtor's explanation, and the testimony of the Debtor's wife, former counsel and former employee, it is the Court's opinion that the Debtor has adequately explained the misstatement at issue. The United States Trustee has offered no proof of an intent to defraud and has therefore failed to meet his burden under §727(a)(4)(A).

### B.     11 U.S.C. §727(a)(4)(D) and §727(a)(6)(A)

The United States Trustee also argues that the Debtor's failure to turn over complete copies of the Debtor's 2009 Tax Return within fourteen days from the date of the filing of the petition, as stated in the Chapter 7 Order, and then failing to provide a complete copy until immediately prior to the 2004 Examination violates §727(a)(4)(D) and §727(a)(6)(A) and the Debtor's discharge should be denied.

#### (1)     Motion for Directed Verdict

Before the Court may proceed with its analysis on the United States Trustee's counts under §727(a)(4)(D) and §727(a)(6)(A), the Court must first address the outstanding issue of whether the Debtor is entitled to a directed verdict on these counts. At the close of the United States Trustee's case, the Debtor moved for a directed verdict on all of the United States Trustee's causes of action. The Court denied the Debtor's Motion as to §727(a)(4)(A), but reserved ruling on the Debtor's Motion with regards to §727(a)(4)(D) and §727(a)(6)(A).

Because this adversary proceeding was tried as a bench trial, the Debtor's Motion for a Directed Verdict is treated as a Rule 52(c)[2] motion for judgment on partial findings. *See Caterpillar Financial Services Corp. v. Tincher (In re Tincher)*, 181 F.3d 104, *3 (6th Cir. 1999) (Table). Pursuant to subsection (c) of Rule 52, a court

> may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence.

Fed. R. Civ. P. 52(c).

The Court shall deny the Debtor's Motion for a Directed Verdict on the United States Trustee's counts under §727(a)(4)(A) and §727(a)(6)(A). The denial of a Debtor's discharge pursuant to §727(a)(4)(A) and §727(a)(6)(A) depends on the credibility of the Debtor, particularly with regard to the Debtor's knowledge, intent and willfulness in acting. There being a genuine issue of material fact as to the Debtor's scienter, the Court declines to grant the Debtor's Motion and instead shall decide the case based on all the evidence introduced by the parties.

### (2)      11 U.S.C. §727(a)(4)(D)

To prevail under §727(a)(4)(D), the United States Trustee must prove by a preponderance of the evidence that (1) the Debtor or someone whose conduct for which the Debtor is legally responsible; (2) knowingly and fraudulently; (3) withheld recorded information including books, documents, records and papers; (4) relating to the Debtor's "property or financial affairs"; (5) from an officer of the estate entitled to possession of it under title 11. *Gordon v. Courtney (In re Courtney)*, 351 B.R. 491, 509 (Bankr. E.D. Tenn. 2006) (*citing Olson v. Slocombe (In re Slocombe)*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006)); *see also Fidelity &*

---

[2] Fed. R. Civ. P. 52(c) is made applicable to these proceedings by Bankruptcy Rule 7052.

*Guaranty Life Insurance Company v. Settembre (In re Settembre)*, 425 B.R. 423, 433 (Bankr. W.D. Ky. 2010).

Upon a review of all the evidence introduced at trial, the Court finds that the United States Trustee has also failed to meet his burden of proof under §727(a)(4)(D). The United States Trustee argues that the Debtor violated these provisions when he provided the Chapter 7 Trustee with an incomplete 2009 Tax Return from which the source of his income could not be determined and then withheld the complete 2009 Tax Return until immediately prior to the 2004 Examination. The Debtor testified that based on his past experience with banks and on the advice of his counsel, he believed that turning over only two pages of his 2009 Tax Return to the Trustee was sufficient. Moreover, the Debtor testified, and the Trustee confirmed, that he did provide the complete 2009 Tax Return to the Trustee prior to the 2004 Examination. Based on this evidence, the Court finds that the United States Trustee has not met his burden of proof in showing that the Debtor knowingly and fraudulently withheld documents from the Chapter 7 Trustee pursuant to §727(a)(4)(D). *In re Courtney*, 351 at 509.

**(3)    11 U.S.C. §727(a)(6)(A)**

Finally, the Court shall grant the Debtor a discharge unless the debtor has "refused…to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. §727(a)(6)(A). The word "refused" must be distinguished from the word "failed." The mere failure of a debtor to obey a court's order, without more, is insufficient to deny or revoke a debtor's bankruptcy discharge. *See Taunt v. Patrick (In re Patrick)*, 290 B.R. 306 , 313 (Bankr. E.D. Mich. 2003) (*citing Yoppolo v. Walter (In re Walter),* 265 B.R. 753, 758 (Bankr. N.D. Ohio 2001) and *Wilmington Trust Co. v. Jarrell (In re Jarrell),* 129 B.R. 29, 33 (Bankr. D. Del. 1991)). The record shows that the Debtor ultimately complied with the Court's Chapter 7 Order and the request by the Trustee for a complete copy of the Debtor's 2009 Tax Return. The Debtor adequately explained his failure to initially comply and the United States

Trustee has presented no evidence that the Debtor willfully violated the Court's Order by refusing to comply. The United States Trustee has therefore not met his burden under §727(a)(6)(A).

## Conclusion

In conformity with the Court's findings of fact and conclusions of law contained herein, judgment shall be entered for the Defendant. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits, and arguments of the parties, regardless of whether or not they are specifically referred to in this decision. A separate order of judgment shall be entered accordingly.

Copies To:

Rachelle Dodson, Esq.

Ryan R. Atkinson, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge
Dated: Friday, September 09, 2011
(jms)**